UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61465-CIV-COHN/SNOW

LINDA DE LUCA,

    Plaintiff,

vs.

MICHAEL CHERTOFF, as Secretary,
Department of Homeland Security,

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS
AS CONVERTED BY THE COURT INTO A MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss Complaint [DE 15].  The Court has carefully considered the Motion, Response [DE 21], Reply [DE 22-1], Plaintiff's Supplemental Pleading [DE 33], Defendant's Supplemental Pleading [DE 34], the exhibits thereto, and the underlying record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

### A. Procedural History

Plaintiff filed the instant action on September 27, 2006, alleging unlawful retaliation and sex discrimination in violation of Title VII.  Defendant sought to dismiss the case for failure to file the action within the time provided by 42 U.S.C. § 2000e-16(c).  Because resolution of the Motion required the review of evidence outside the pleadings, the Court converted the Motion to Dismiss into a motion for summary judgment and provided the parties leave to conduct limited discovery and supplement

their filings [DE 23].

## B. Factual Background

Plaintiff Linda De Luca was employed by the United States Transportation Security Administration ("TSA") as an airport security screener from September 6, 2002 through March 8, 2003 at Fort Lauderdale/Hollywood International Airport. (Compl., ¶¶ 7, 9 [DE 1]; Final Agency Decision, at 1-2, Def. Supplement, Exh. 1-A [DE 34-2].) Plaintiff was told that she was terminated on March 8, 2003 for failing the image mastery test given as part of her pre-employment conditions. (Compl., ¶¶ 8-9.) However, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") administrative complaint alleging that the adverse employment action was the result of sex and age discrimination. (Final Agency Decision, at 1.) Thereafter, in June 2004, Plaintiff was rehired by TSA at the West Palm Beach Airport. She was again terminated on March 31, 2005. (Id.) Although Plaintiff was told that this second termination was due to her intentional falsification of records, Plaintiff alleges that she never falsified records and that the firing was an act of retaliation once the West Palm Airport learned that she had previously filed a discrimination charge. (Compl., ¶¶ 13-15.)

On May 30, 2006, the Department of Homeland Security's Office of Civil Rights and Civil Liberties ("OCRCL") issued a Final Agency Decision ("FAD") summarizing the EEOC Administrative Judge's finding that Plaintiff was discriminated against and was therefore entitled to reinstatement and backpay. (Mot., Exh. A; Mot., Exh. B.) The parties dispute when Plaintiff and her counsel first received a copy of the FAD, beginning the ninety-day window for filing a civil claim. Defendant alleges that the

OCRCL sent the document to Plaintiff and her counsel by certified mail on May 30, 2006.  (Second Decl. Junish Arora, Def. Suppl., Exh. 1, ¶¶ 1-7, Exh. A-C [DE 34-2].)  According to the certified mail receipts, Plaintiff and her counsel received mail from the OCRCL on June 7, 2006 and June 6, 2006, respectively.  (Def. Suppl., Exh. C, D [DE 34-2].)  Plaintiff signed the receipt for the mail delivered to her own address, and April R. Kadel, a Whitelock & Associates, P.A. legal assistant, signed for the envelope delivered to counsel's office.  (Dep. Linda De Luca, Def. Suppl., Exh. 2, at 5-7 [DE 34-2]; Dep. April Kadel, Def. Suppl., Exh. 3, at 7-10 [DE 34-4].)  However, Plaintiff's Affidavit states that she never received the FAD from the OCRCL.  (Decl. Linda De Luca, Pl. Suppl., Exh. 4, ¶¶ 2-3 [DE 33-2].)  In her subsequent deposition, Plaintiff conceded that she received a certified mail item on June 7, 2006 but did not recall its contents.  (Dep. Linda De Luca, at 5-7.)  Similarly, Plaintiff's counsel is uncertain of the contents of the certified mail delivered to his office.  Ms. Kadel states that she "never received a Final Agency Action by the Department."  (Aff. April R. Kadel, Pl. Suppl., Exh. 4, ¶¶ 1-3 [DE 33-2].)  She acknowledges that the signature on the certified mail receipt is her own, but she does not believe she wrote the date on the document, nor does she know the contents of the mail item that accompanied the receipt.  (Dep. April Kadel, at 7-10.)  Ms. Kadel and Christopher J. Whitelock, Plaintiff's counsel and the Records Custodian for the law office, claim that they searched their documents, billing records, calendar dockets, and files and have found no evidence that they received the FAD from the OCRCL.  (Aff. April R. Kadel, ¶ 4; Aff. Christopher J. Whitelock, Pl. Suppl., Exh. 4, ¶¶ 3-8 [DE 33-2].)

       The parties nevertheless agree that TSA Attorney-Advisor M. Bradley Flynn

forwarded a copy of the FAD to Plaintiff's counsel on August 1, 2006, the day Mr. Flynn first received it. Until that date, Mr. Flynn was unaware that the FAD had been issued. (Decl. M. Bradley Flynn, Reply, Exh.1, ¶ 8.) In the interim, from May 2006 through mid-August 2006, Plaintiff's counsel and Mr. Flynn engaged in discussions regarding the potential resolution of Plaintiff's claim. More specifically, after the August 1, 2006 communication, Mr. Flynn informed Plaintiff's counsel that "relief would be implemented" and engaged in "cordial" conversations about resolution of Plaintiff's situation. (Dep. M. Bradley Flynn, Def. Suppl., Exh. 1, at 20, 29 [DE 33-2].) Plaintiff's counsel provided the Court with e-mail exchanges dated through mid-August in which Mr. Flynn assured Plaintiff's counsel that while the necessary prerequisites to reinstatement were being performed, "Ms. DeLuca [sic] is still racking up backpay, for which she will be compensated." (Correspondence from Bradley Flynn to Christopher Whitelock, Aug. 8 and 14, Def. Suppl., Exh. 2 [DE 33-2].)

Because the situation remained unresolved, Plaintiff filed the instant action on September 27, 2006. Plaintiff claims that she did not file suit at an earlier date because she did not anticipate it being necessary until after experiencing significant delays in the implementation of the remedies. (Dec. Linda De Luca, ¶¶ 6-9.) Defendant counters that the claim should be dismissed as untimely filed.

## II. ANALYSIS

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

### B.  Timeliness

Pursuant to 42 U.S.C.A. § 2000e-16(c), an aggrieved employee may file a civil action "[w]ithin 90 days of receipt of notice of final action taken by a department, agency, or unit . . . if aggrieved by the final disposition of his complaint, or by the failure

5

to take final action on his complaint."  For the purposes of the statute, the notification letter may be received by either the plaintiff or plaintiff's counsel, and there is no "material difference between receipt by an attorney and receipt by that attorney's office."  Irwin v. Dep't of Veterans Affairs, 496 U.S. 89, 91, 93 (1990).  Consequently, the ninety-day statutory period begins on the date that the document is received by either the plaintiff or the office of the plaintiff's attorney, whichever is first.  Furthermore, evidence "concerning specific office procedures for preparing and mailing notices in addition to evidence of mail received from the purported sender at the same address . . . is sufficient to raise a presumption of properly mailed documents."  Kerr v. McDonald's Corp., 427 F.3d 947, 952 (11th Cir. 2005).

The Eleventh Circuit has consistently held that a plaintiff has "a minimal responsibility" in the resolution of her claims.  Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1340 (11th Cir. 1999) (citing Lewis v. Conners Steel Co., 673 F.2d 1240 (11th Cir. 1982) (interpreting Franks v. Bowman Transp. Co., 495 F.2d 398 (5th Cir. 1974), rev'd on other grounds, 424 U.S. 747 (1976))).[1]  When a complainant has reason to know that she received mail from the federal agency considering her case, she has a *de minimus* responsibility to obtain the letter and act upon it in a timely manner.  Zillyette, 179 F.3d at 1341 (discussed below); see also, e.g., Leonard v. Rumsfeld, 146 F.Supp.2d 1227 (M.D. Ala. 2001) (statutory period began when plaintiff

---

[1] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

received final agency decision, even though she did not read it and agency failed to send copy to her attorney as previously requested).  Recognizing this minimal responsibility, the Eleventh Circuit applies "a case-by-case approach in determining what constitutes receipt and when the time is triggered."  Stallworth v. Wells Fargo Armored Services Corp., 936 F.2d 522, 524 (11th Cir. 1991); see also Zillyette, 179 F.3d at 1341.  A plaintiff should not "enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless."  Lewis, 673 F.2d at 1242.

In this case, un-rebutted evidence shows that the OCRCL sent mail to Plaintiff and Plaintiff's counsel on May 30, 2006, and that these mail items were received by them on June 7 and June 6, respectively.  According to the EEO Complaint Manager, the OCRCL is not responsible for sending and has not sent any item other than the FAD to Plaintiff and Plaintiff's counsel.  (Second Decl. Junish Aurora, ¶¶ 4-6.)  Although both recipients claim that they do not know the contents of those mail items, the detailed explanation of OCRCL mailing procedures provided by the Defendant is sufficient to raise a presumption that the FAD was properly mailed.  Kerr, 427 F.3d at 952.  Without contrary evidence from Plaintiff, the Court is unpersuaded that the contested mail items contained something other than the FAD.

The instant case is analogous to Zillyette.  In that case, the EEOC sent the plaintiff a certified letter informing him of his right to sue within ninety days.  Zillyette, 179 F.3d at 1338.  The Postal Service was twice unable to deliver the letter because the plaintiff was not at home, and both times the Postal Service agent left a standard notice to inform the plaintiff that the letter would be redelivered or could be picked up at the Post Office for a specified time, after which it would be returned to sender.  Id. at

1338-39.  Standard practice dictates that the sender's name be included on the delivery notice.  Id. at 1339.  The plaintiff eventually picked up the letter, some time after the second notice was left, and filed suit ninety-eight days after the Post Office's first attempted delivery.  Id.  In considering whether the plaintiff's complaint was timely, the court determined that the ninety-day statutory period began to run after he had a reasonable period (three days) to procure the letter.  Id. at 1341-42.  In reaching this conclusion, the court emphasized that the plaintiff bore the minimal burden of retrieving the letter because the delivery notice he received contained the sender's name.  Id. at 1341.

Similarly, in the instant case, the Court has been presented with un-rebutted evidence that Plaintiff and Plaintiff's counsel signed certified mail receipts specifying that the mail items they were receiving were from the OCRCL.  Because the Plaintiff and her counsel should have been aware that the letters were from the OCRCL from the moment of receipt, they bore the minimal burden of ascertaining and acting upon the mail items' content from that time.  They failed to meet this burden.  Thus, the ninety-day allotted period for filing began June 6, 2006, the day Plaintiff's counsel received the FAD, and Plaintiff's complaint is not timely.

### C. Equitable Tolling

Although the Plaintiff's claim was filed outside the statutory period, it is within the Court's discretion to consider the application of equitable tolling.  "The Supreme Court has made clear that tolling is an extraordinary remedy which should be extended only sparingly."  Leonard, 146 F.Supp.2d at 1237 (quoting Justice v. United States, 6 F.3d

1474, 1479 (11th Cir. 1993)).  Precedential decisions in this Circuit have outlined the limited circumstances in which equitable tolling may be appropriate: (1) "the statutory notice does not advise the plaintiff of the ninety-day limitations period" (2) "the plaintiff is misled by further communication from the EEOC or agency as to the limitations period"; (3) there is a court-procedure-based delay; or (4) there is "affirmative misconduct on the part of the defendant."  Id. at 1237-38 (citing Irwin, 498 U.S. at 96, 111) (other citations omitted)).  Equitable tolling does not extend to a plaintiff's lack of due diligence or excusable neglect,  Irwin, 498 U.S. at 458, or to a counsel's avoidable delays.  Sandvik v. United States, 177 F.3d 1269, 1272 (11th Cir. 1999).  In essence, equitable tolling is reserved for plaintiffs whose delays in filing are reasonable and justified under the circumstances.

In applying the principles of equitable modification, the Eleventh Circuit has held that "while the employer is actively trying to find a position within the company for the employee," the filing period "is equitably tolled until such time as it is or should be apparent to an employee with a reasonably prudent regard for his rights that the employer has ceased to actively pursue such an option."  Cocke v. Merrill Lynch & Co., Inc., 817 F.2d 1559, 1561 (11th Cir. 1987).  The law cannot expect an employee to sue her employer while that employer continues to assure her of pending reinstatement.  Id. at 1561-62; see also Pearson v. Macon-Bibb County Hosp. Auth., 952 F.2d 1274, 1280 (11th Cir. 1992).  When equitable tolling becomes an issue in this context, summary judgment is inappropriate.  Alexander v. Vesta Ins. Group, Inc., 147 F.Supp.2d 1223 (N.D. Ala. 2001) (determining that the possibility of equitable tolling created "at least a jury question on the issue of whether Plaintiffs [sic] EEOC charges were timely"); see

also, e.g., <u>Harrison v. Arvida Realty Sales, Inc.</u>, No. 93-645-CIV-T-17, 1996 WL 421425 (M.D. Fla. March 28, 1996) (denying defendant's motion for summary judgment because of genuine issue as to whether statute of limitations should be equitably tolled).

It is uncontested in this case that Plaintiff was repeatedly assured, long after the date on which the FAD was issued and mailed, that her reinstatement was imminent and she was continuing to accrue backpay. Mr. Flynn maintained amicable communication with Plaintiff's lawyer regarding the remedies Plaintiff was to receive at least as late as August 14, 2006. (Correspondence from Bradley Flynn to Christopher Whitelock, Aug. 14, at 78.) Therefore, it would be unreasonable for this Court to hold Plaintiff to the ninety-day period following original receipt of the FAD. It is not necessary for the Court to determine the precise date at which the reasonably prudent person would determine that filing suit was necessary under these specific circumstances. Following the Eleventh Circuit's case-by-case approach, the Court holds that Plaintiff was reasonable and justified in delaying her suit until late September. Although the beginning of Plaintiff's ninety-day statutory period for filing was triggered when her counsel received the FAD on June 6, 2006, thus technically rendering her September 27, 2006 claim untimely, equitable tolling precludes summary judgment on the timeliness issue.

### III. CONCLUSION

Based on the foregoing it is **ORDERED AND ADJUDGED** that the Defendant's Motion to Dismiss Complaint [DE 15], as converted by the Court into a motion for

summary judgment, is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 18th day of July, 2007.

*[signature]*
JAMES I. COHN
United States District Judge

Copies to all counsel of record on CM/ECF